**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

TOBY BOYCE, derivatively on behalf of Nominal Defendant SPRUCE POWER HOLDING CORPORATION

Plaintiff,

v.

JONATHAN J. LEDECKY, BRIAN PIERN, THOMAS J. HYNES III, DIMITRI KAZARINOFF, JAMES H.R. BRADY, KEVIN GRIFFIN, CHRISTOPHER M. HAYES, SARA SCLARSIC, DEBORA M. FRODL, NIHARIKA T. RAMDEV, DECLAN P. FLANAGAN, EFRAT EPSTEIN, and KATRINA ADAMS,

Defendants,

and

SPRUCE POWER HOLDING CORPORATION,

Nominal Defendant.

Case No. 1:23-cv-08591-JLR

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM IN SUPPORT OF DEFENDANTS KAZARINOFF AND HYNES' MOTION TO DISMISS THE VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

**Table of Contents**


I. Introduction ..... 1

II. Allegations against the Legacy XL Defendants ..... 2

III. Legal Standard ..... 4

IV. Argument ..... 5

A. Plaintiff Lacks Jurisdiction for the Claims against the Legacy XL Defendants. ..... 5

1. Plaintiff Does Not Allege a Federal Contribution Claim against the Legacy XL Defendants. ..... 5

2. Absent a Federal Claim, This Court Should Decline Jurisdiction over Plaintiff's State Law Claims against the Legacy XL Defendants. ..... 8

B. The Court Should Dismiss the Claims against the Legacy XL Defendants that Are Based on Conduct before the Acquisition. ..... 9

1. For Conduct before the Acquisition, Plaintiff Lacks Standing and Failed to Allege that the Legacy XL Defendants Owed Fiduciary Duties to Plaintiff. ..... 9

2. The Statute of Limitations Bars Any Fiduciary Duty Claims Based on Conduct before September 29, 2020, Including the September 18, 2020 Statement ..... 10

C. Plaintiff's Post-Acquisition Claims Should Be Dismissed. ..... 12

1. Plaintiff Does Not Allege a Fiduciary Duty Claim against the Legacy XL Defendants in Their Capacities as Directors after the Acquisition. ..... 12

2. Plaintiff Does Not Allege a Fiduciary Duty Claim against the Legacy XL Defendants in their Capacities as Officers after the Acquisition. ..... 13

3. Plaintiff Does Not Allege an Unjust Enrichment Claim. ..... 16

4. Plaintiff Does Not Allege a Corporate Waste Claim. ..... 17

V. Conclusion ..... 19

## Table of Authorities

### Cases

*In re 3COM Corp.*,
No. C.A. 16721, 1999 WL 1009210 (Del. Ch. Oct. 25, 1999) ..........18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........4

*Balogun v. N.Y. State Div. of Hum. Rts.*,
No. 22-2756, 2023 WL 8446743 (2d Cir. Dec. 6, 2023) ..........8

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
757 F. Supp. 2d 260 (S.D.N.Y. 2010) ..........10

*In re Bank of Am. Litig.*,
No. 09 MD 2058 ..........16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........4, 5

*In re Brocade Commc'ns Sys., Inc. Deriv. Litig.*,
615 F. Supp. 2d 1018 (N.D. Cal. 2009) ..........6

*Calma on Behalf of Citrix Sys., Inc. v. Templeton*,
114 A.3d 563 (Del. Ch. 2015) ..........17

*Cantor Fitzgerald, L.P. v. Cantor*,
724 A.2d 571 (Del. Ch. 1998) ..........16

*Chechele v. Laubies*,
527 F. Supp. 3d 526 (S.D.N.Y. 2021) ..........5

*In re Citigroup Inc. S'holder Deriv. Litig.*,
964 A.2d 106, 134 (Del. Ch. 2009) ..........12

*In re Cornerstone Therapeutics Inc., S'holder Litig.*,
115 A.3d 1173 (Del. 2015) ..........12

*CVC Claims Litig. LLC v. Citicorp Venture Cap. Ltd.*,
No. 03 CIV. 7936 (DAB), 2006 WL 1379596 (S.D.N.Y. May 18, 2006) ..........9

*DiBattista v. Greco*,
No. CV 20-590-RGA, 2021 WL 327399 (D. Del. Jan. 31, 2021) ..........6, 7

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
822 F.2d 1242 (2d Cir. 1987).....5

*Emerald Partners v. Berlin*,
787 A.2d 85 (Del. 2001).....12

*Espinoza v. Zuckerberg*,
124 A.3d 47 (Del. Ch. 2015).....18, 19

*Feldman v. Cutaia*,
No. CIV.A. 1656-N, 2006 WL 920420 (Del. Ch. Apr. 5, 2006).....10

*Francis v. Kings Park Manor, Inc.*,
992 F.3d 67 (2d Cir. 2021) (en banc).....4

*Garcia v. Carrion*,
No. CIV 09-1507 JAG, 2010 WL 3662593 (D.P.R. Aug. 11, 2010).....19

*Gavin v. Club Holdings, LLC*,
No. 15-175-RGA, 2016 WL 1298964 (D. Del. Mar. 31, 2016).....11

*Kusnier v. Virgin Galactic Holdings, Inc.*,
639 F. Supp. 3d 350 (E.D.N.Y. 2022).....14

*Lewis v. Vogelstein*,
699 A.2d 327 (Del. Ch. 1997).....18

*Lyon on Behalf of AMC Ent. Holdings, Inc. v. Aron*,
No. 21-CV-07940-ALC, 2023 WL 2586818 (S.D.N.Y. Mar. 21, 2023).....5

*MacNaughton v. Young Living Essential Oils*,
LC, 67 F.4th 89 (2d Cir. 2023).....5

*Marcus v. AT&T Co.*,
138 F.3d 46 (2d Cir. 1998).....8

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993).....5

*Monroe Cnty. Emp. Ret. Sys. v. Carlson*,
2010 WL 2376890 (Del. Ch. June 7, 2010).....16

*N.Y. Merc. Exch., Inc. v. IntercontinentalExchange, Inc.*,
497 F.3d 109 (2d Cir. 2007).....8

*Olson v. Major League Baseball*,
29 F.4th 59 (2d Cir. 2022).....5

*Omnicare, Inc. v. NCS Healthcare, Inc.*,
809 A.2d 1163 (Del. Ch. 2002)....................9

*Pall v. KPMG, LLP*,
No. 3:03CV00842 AWT, 2006 WL 2800064 (D. Conn. Sept. 29, 2006) ....................6, 7

*In re Pfizer Inc. S'holder Deriv. Litig.*,
722 F. Supp. 2d 453 (S.D.N.Y. 2010)....................16

*Pomeranz v. Museum Partners, L.P.*,
No. CIV. A. 20211, 2005 WL 217039 (Del. Ch. Jan. 24, 2005) ....................11

*In re Primedia, Inc. S'holder Litig.*,
No. CIV.A. 6511-VCL, 2013 WL 6797114 (Del. Ch. Dec. 20, 2013)....................11

*Steinberg v. Dimon*,
No. 14 CIV. 688 PAC, 2014 WL 3512848 (S.D.N.Y. July 16, 2014)....................16

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016)....................5

*In re Tyson Foods, Inc.*,
919 A.2d 563 (Del. Ch. 2007)....................10, 11

*Urdan v. WR Cap. Partners, LLC*,
No. CV 2018-0343-JTL, 2019 WL 3891720 (Del. Ch. Aug. 19, 2019), *aff'd*,
244 A.3d 668 (Del. 2020) ....................9

*In re Walt Disney Co. Deriv. Litig.*,
906 A.2d 27 (Del. 2006) ....................18

*Weil v. Morgan Stanley DW Inc.*,
877 A.2d 1024 (Del. Ch. 2005), *aff'd*, 894 A.2d 407 (Del. 2005)....................14

*Wood v. Baum*,
953 A.2d 136 (Del. 2008) ....................12

*Xcell Energy & Coal Co., LLC v. Energy Inv. Grp., LLC*,
No. CIV.A. 8652-VCN, 2014 WL 2964076 (Del. Ch. June 30, 2014) ....................10

*Zupnick v. Goizueta*,
698 A.2d 384 (Del. Ch. 1997)....................17

**Statutes**

10 Del. C. § 8106 ....................11

10 Del. C. § 8112 ....................11

15 U.S.C. § 78u-4 ....................................................................................................................3, 6, 7

28 U.S.C. § 1367(c) ....................................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................................................................................................................5

Fed. R. Civ. P. 12(b)(6)....................................................................................................................4

## I. INTRODUCTION

Through this derivative shareholder action against former directors and officers of Spruce Power Holding Corporation ("Spruce Power"), Plaintiff Toby Boyce attempts to put a square peg in a round hole. Borrowing heavily from a securities class action complaint, Plaintiff ignored jurisdictional restraints and critical distinctions that apply to derivative actions against individual officers and directors in federal court. As a result, the claims against Dimitri Kazarinoff and Thomas Hynes III (collectively, the "Legacy XL Defendants"), who owed no fiduciary duty to Plaintiff before the acquisition at the heart of the Complaint, and who did not breach any duty after that acquisition, should be dismissed.

At the outset, Plaintiff did not make a demand on Spruce Power's Board of Directors before filing this action and failed to plead demand futility. For the reasons stated in the Spruce Power Memorandum of Law in Support of Defendant's Motion to Dismiss (ECF No. 46), which the Legacy XL Defendants join, this case should be dismissed. Should the Court reject the demand futility argument, the Court still should dismiss this action. Plaintiff's sole federal claim against the Legacy XL Defendants, a federal contribution claim, is unripe. The Legacy XL Defendants ask this Court to decline jurisdiction over the remaining state claims, which all are committed to the exclusive jurisdiction of Delaware courts through a choice of forum clause.

If the Court retains jurisdiction, the state law claims against the Legacy XL Defendants for breach of fiduciary duty, unjust enrichment, and corporate waste fail. Plaintiff lacks standing to pursue pre-acquisition claims against officers and directors of the company acquired by Spruce Power. Relatedly, before the acquisition, the Legacy XL Defendants did not owe any fiduciary duties to Plaintiff. For similar reasons, Plaintiff cannot pursue pre-acquisition claims barred by the statute of limitations. The remaining post-acquisition claims against the Legacy XL Defendants, which concern only a handful of alleged misstatements, should be dismissed.

## II. ALLEGATIONS AGAINST THE LEGACY XL DEFENDANTS

Plaintiff brings this shareholder derivative action on behalf of Nominal Defendant Spruce Power, a Delaware corporation formerly known as XL Fleet Corporation ("XL Fleet"). (Compl. ¶ 1, ECF No. 1.) This action involves two separate corporations—with different directors, officers, and shareholders—that merged on December 21, 2020. (*Id.* ¶¶ 2, 39-53.) The predecessor of Spruce Power, Pivotal Investment Corporation II ("Pivotal"), originally was formed as a special purpose acquisition company ("SPAC") on March 20, 2019. (*Id.* ¶ 2.) On December 21, 2020, a wholly-owned subsidiary of Pivotal acquired XL Hybrids, Inc. ("Legacy XL"), and Pivotal changed its name to XL Fleet Corporation ("XL Fleet"). (*Id.* ¶ 198.) XL Fleet later changed its name to Spruce Power. (*Id.* ¶ 2.)

Hynes founded Legacy XL in 2009 and served as its CEO from July 2009 through October 2019. (*Id.* ¶ 41.) At that point, Hynes was appointed Chief Strategy Officer of Legacy XL, a position he held until the acquisition closed in December 2020. (*Id.*) When the acquisition was completed, Hynes transitioned roles to serve as President of XL Fleet until his resignation in March 2022. (*Id.*)

Kazarinoff joined Legacy XL as Chief Executive Officer in October 2019. (*Id.* ¶ 42.) His transition to Legacy XL followed thirty years of experience in energy innovation, automotive, and electric vehicle roles at prominent companies. (*Id.* ¶ 111.) Kazarinoff never served as an officer or director of Pivotal. (*Id.* ¶¶ 42, 199.) When the acquisition closed in December 2020, Kazarinoff was appointed CEO, as well as principal financial and accounting officer, and joined the XL Fleet Board. (*Id.*) Kazarinoff resigned in November 2021, nine months after Muddy Waters Research published a short seller report that, according to Plaintiff, exposed XL Fleet's alleged fraud. (*Id.* ¶¶ 42, 215-42.)

Plaintiff does not allege that the XL Defendants profited from their tenures at XL Fleet beyond an increase in salary and *target* bonus, neither of which Plaintiff connects to any public statement. (*Id.* ¶¶ 41-42, 214.) Plaintiff alleges that Kazarinoff's Legacy XL options converted into shares of XL Fleet with the acquisition, but does not allege that Kazarinoff increased his holdings as a result of the acquisition. (*Id.* ¶¶ 42, 202.) According to Plaintiff, Kazarinoff's holdings did not exceed more than one percent of XL Fleet's stock. (*Id.* ¶ 42.) Similarly, Plaintiff does not allege that Hynes' holdings increased as a result of the acquisition. (*Id.* ¶¶ 41, 202, 214.) Importantly, Plaintiff does not allege that the Legacy XL Defendants sold any shares. (*Id.* ¶¶ 41-42, 202, 214.) Moreover, Plaintiff attributes salary and target bonus increases in February 2021 to "2020 performance" generally, and not to the acquisition or any alleged misstatement. (*Id.* ¶ 214.)

Plaintiff does not allege that he was a shareholder of Legacy XL. Rather, he generally alleges that he was a shareholder of Spruce Power during the Relevant Period, defined as September 18, 2020 to September 29, 2023. (*Id.* ¶¶ 1, 37.)

Plaintiff asserts four claims against the Legacy XL Defendants: a federal contribution claim in Count I ("Federal Contribution Claim"), a claim for breach of fiduciary duty in Count III, and claims for unjust enrichment and corporate waste in Counts IV and V. Plaintiff bases his federal contribution claim on Section 21D(f) of the Securities Exchange Act of 1934 and potential liability stemming from the consolidated class action lawsuit captioned *In re XL Fleet Corp. Securities Litigation*, Case No. 21-cv-02002-JLR (S.D.N.Y. filed Mar. 8, 2021) (the "Related Securities Action"). (Compl. ¶ 361.) On January 18, 2024, this Court entered an order preliminarily approving settlement among the parties to that action. (Related Securities Action, ECF No. 191.) The Legacy XL Defendants are not named in Plaintiff's claim alleging proxy statement violations

in Count II ("Proxy Statement Claim"), which is asserted exclusively against former directors or officers of Pivotal.

Plaintiff alleges that the Legacy XL Defendants breached their fiduciary duties by causing or allowing the Company to disseminate materially misleading information to Spruce Power shareholders. (Compl. ¶ 383.) Plaintiff alleges only four public misleading statements by Kazarinoff, two of which preceded the acquisition—a September 18, 2020 conference call (*id.* ¶¶ 247-48) and an October 26, 2020 webinar (*id.* ¶¶ 286, 290-91)—and two of which followed it—a December 22, 2020 press release (*id.* ¶ 316) and the January 13, 2021 registration statement (*id.* ¶ 320). Plaintiff similarly alleges nine public misstatements by Hynes, seven of which preceded the acquisition—the September 18, 2020 conference call (*id.* ¶¶ 247-48), a September 18, 2020 interview (*id.* ¶ 257), an October 26, 2020 webinar (*id.* ¶¶ 286, 290-91), a November 12, 2020 press release (*id.* ¶ 293), a November 16, 2020 press release (*id.* ¶ 305), a November 16, 2020 webinar (*id.* ¶ 307), and a November 23, 2020 interview (*id.* ¶ 309)—and only two of which followed it—a December 23, 2020 interview (*id.* ¶ 318), and the January 13, 2021 Registration Statement (*id.* ¶ 320). Plaintiff does not attribute any specific language within the registration statement to the Legacy XL Defendants. (*Id.* ¶ 322.)

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court draws reasonable inferences in the plaintiff's favor and accepts as true all non-conclusory allegations of fact. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc); *see also Iqbal*, 556 U.S. at 678. However, a plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent

with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Where a document is referenced in a complaint, the documents control and this Court need not accept as true the allegations in the . . . complaint." *Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016) (quotation marks and citation omitted).

Plaintiff's fiduciary duty claim sounds in fraud and therefore "must satisfy the heightened pleading standards of [Rule] 9(b)." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "One of the primary objectives of Rule 9(b)'s particularity requirement is to ensure that defendants receive 'fair notice of a plaintiff's claim, to enable preparation of a defense.' " *MacNaughton v. Young Living Essential Oils*, LC, 67 F.4th 89, 99 (2d Cir. 2023) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)). "Bare-bones allegations therefore do not suffice." *Id.* To satisfy Rule 9(b)'s particularity requirement, a "complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id*. (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *Chechele v. Laubies*, 527 F. Supp. 3d 526, 536 (S.D.N.Y. 2021).

## IV. ARGUMENT

### A. Plaintiff Lacks Jurisdiction for the Claims against the Legacy XL Defendants.

#### 1. Plaintiff Does Not Allege a Federal Contribution Claim against the Legacy XL Defendants.

Plaintiff's Federal Contribution Claim against the Legacy XL Defendants is plainly premature. Plaintiff's right to the claim arises only if a final judgment is entered against the Legacy XL Defendants in the Related Securities Action. *Lyon on behalf of AMC Ent. Holdings, Inc. v. Aron*, No. 21-CV-07940-ALC, 2023 WL 2586818, at *7 (S.D.N.Y. Mar. 21, 2023). "Under

Section 21D, Plaintiff has a right to contribution only if 'final judgment is entered' in the Securities Action against the Defendants named in the contribution claim *and* if the trier of fact 'specifically determines that [those Defendants] knowingly committed a violation of the securities laws.' " *Id.* at *7 (quoting *DiBattista v. Greco*, No. CV 20-590-RGA, 2021 WL 327399, at *7 (D. Del. Jan. 31, 2021)) (emphasis added). Until then, the contribution claim is merely "contingent upon the outcome of a separate, pending lawsuit" and "courts generally dismiss [such] claims as premature." *Pall v. KPMG, LLP*, No. 3:03CV00842 AWT, 2006 WL 2800064, at *3 (D. Conn. Sept. 29, 2006) (quotation marks and citation omitted); *see also In re Brocade Commc'ns Sys., Inc. Deriv. Litig.*, 615 F. Supp. 2d 1018, 1049 (N.D. Cal. 2009) ("As there is no final judgment in that [related securities] case, the claim for contribution is not ripe and is hereby dismissed without prejudice."). Plaintiff does not allege a final judgment in that action, and no such judgment has been entered.[1] Therefore, Plaintiff has not stated a contribution claim and, at present, cannot state one. For that reason alone, Plaintiff's contribution claim must be dismissed.

Relatedly, Plaintiff's Federal Contribution Claim is not ripe because he does not *allege* that his claim follows a final judgment entered against the Legacy XL Defendants in the Related Securities Action. Rather, his claim relies entirely and insufficiently on a series of contingencies in the pending Related Securities Action. Plaintiff alleges that the Legacy XL Defendants "*would*

[1] During the initial pretrial conference on January 16, 2024, Plaintiff pointed to a recent settled SEC action brought against Spruce Power (but not the Legacy XL Defendants) on September 28, 2023, in which Spruce Power neither admitted nor denied any violations of the federal securities laws. *In re Spruce Power Holding Corp.*, Admin. Proc. File No. 3-21748 (Sept. 28, 2023). Plaintiff may not pursue contribution against the Legacy XL Defendants related to the SEC action for at least three reasons: (1) the contribution claim asserted by Plaintiff is predicated on Section 21D(f), which applies only to private class actions (15 U.S.C. § 78u-4(a)); (2) Plaintiff's Complaint does not include any allegations related to the SEC action; and (3) Plaintiff does not allege facts establishing that, if the Legacy XL Defendants had been "joined in the original action, would have been liable for the same damages" (§ 78u-4(f)(8)).

*be liable* for the same [10b-5] damages as Spruce Power," "*could be held liable* to the plaintiffs in the Related Securities Action," and "*[w]ere the Company to be held liable* in said Related Securities Action, [the Legacy XL Defendants] *would be liable* to it for contribution." (Compl. ¶¶ 361, 370 (emphasis added).) Courts find similar language insufficient to state a claim for contribution. *See DiBattista*, 2021 WL 327399, at *6 (dismissing contribution claim as unripe where plaintiff alleged "*if* [the Company] is ultimately found liable for violating the federal securities laws [in the related securities action], the Company's liabilities *will arise* due to the acts or omissions of [the officer defendants]") (emphasis added)). As in *DiBattista*, any ultimate liability for Spruce Power in the Related Securities Action is still hypothetical and speculative—it may not even happen—so the derivative contribution claim against the Legacy XL Defendants is still premature. *Id.* at *6-7. "[B]ecause plaintiff is attempting to bring a contribution claim which is contingent upon a finding of liability in the related actions, the injury (and availability of a contribution claim) depends upon the results in the related actions, making the contribution claim not ripe." *Pall*, 2006 WL 2800064, at *3 (dismissing claim for lack of ripeness).

Moreover, the Related Securities Action is well on its way to settlement, and if the action is settled, "all future claims for contribution arising out of the action" will be barred. 15 U.S.C. § 78u-4(f)(7)(A); *accord DiBattista*, 2021 WL 327399, at *7 (concluding that "if there is a settlement in the Securities Action, contribution claims against the settling parties would be barred") (citing *Pall*, 2006 WL 2800064, at *3). On January 18, 2024, this Court preliminarily approved a settlement among the parties and scheduled the final approval hearing for April 30, 2024. (Related Securities Action, ECF No. 191.) That settlement, albeit not final, is yet another contingency that makes Plaintiff's contribution claim unripe. Even if the settlement were to fail, the plaintiffs in the Related Securities Action will have to litigate this case to a successful final

judgment with a determination that the Legacy XL Defendants knowingly committed a violation of the securities laws before the Plaintiff here could bring a claim for contribution.

**2. Absent a Federal Claim, This Court Should Decline Jurisdiction over Plaintiff's State Law Claims against the Legacy XL Defendants.**

Plaintiff asserted federal question jurisdiction for the Federal Contribution Claim and, possibly,[2] the Proxy Statement Claim. (Compl. ¶ 34.) Of those two claims, only the Federal Contribution Claim was asserted against the Legacy XL Defendants. (*Id.* ¶ 375.) Plaintiff asserted supplemental jurisdiction over the remaining state law claims "as they relate to Plaintiff's [Proxy Statement Claim]." (*Id.* ¶ 35.) Because the Federal Contribution Claim should be dismissed, and Plaintiff did not allege a Proxy Statement Claim against the Legacy XL Defendants, Plaintiff did not allege a jurisdictional basis for the state law claims against the Legacy XL Defendants. Alternatively, having dismissed the sole federal claim against the Legacy XL Defendants, this Court could exercise its discretion to dismiss the remaining state law claims against the Legacy XL Defendants. 28 U.S.C. § 1367(c).

If this Court dismisses both the Federal Contribution and Proxy Statement Claim, this Court should dismiss the state law claims as well. *N.Y. Merc. Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 119 (2d Cir. 2007) (stating that "[i]n general, where the federal claims are dismissed before trial, the state claims should be dismissed as well") (quoting *Marcus v. AT&T Co.*, 138 F.3d 46, 57 (2d Cir. 1998)); *see also Balogun v. N.Y. State Div. of Hum. Rts.*, No. 22-2756, 2023 WL 8446743, at *3 (2d Cir. Dec. 6, 2023) (after dismissing federal claims, values of "judicial economy, convenience, fairness, and comity . . . weigh strongly in favor of

[2] The Complaint does not clearly allege jurisdiction for the Proxy Statement Claim. Plaintiff does not allege federal question jurisdiction for the claim (Compl. ¶ 34.) Plaintiff only identified that claim as the basis for supplemental jurisdiction over his various state law claims. (*Id.* ¶ 35.)

dismissing [plaintiff's] state-law claims"). The declination of jurisdiction is particularly appropriate here, when the Articles of Incorporation provide for the Delaware Court of Chancery as the exclusive jurisdiction for derivative actions and fiduciary duty claims. Second Am. and Restated Cert. of Incorp. (Dec. 21, 2020). Finally, for the reasons stated in Spruce Power's Memorandum, and regardless of the resolution of the federal claims, the choice of law provision in the Articles of Incorporation bars Plaintiff from bringing the state law claims in this forum.

### B. The Court Should Dismiss the Claims against the Legacy XL Defendants that Are Based on Conduct before the Acquisition.

#### 1. For Conduct before the Acquisition, Plaintiff Lacks Standing and Failed to Allege that the Legacy XL Defendants Owed Fiduciary Duties to Plaintiff.

Plaintiff lacks standing to bring the state law claims based on the Legacy XL Defendants' conduct when they were officers of Legacy XL because Plaintiff did not allege that he ever was a shareholder of Legacy XL. "As a general rule, only persons who were stockholders at the time of the alleged wrongdoing have standing to sue corporate directors for breach of fiduciary duty." *Omnicare, Inc. v. NCS Healthcare, Inc.*, 809 A.2d 1163, 1169 (Del. Ch. 2002) (holding that plaintiff, a bidder-corporation, lacked standing to assert breach of fiduciary duty claims against company directors' approval of a merger when plaintiff purchased shares after the merger was approved); *Urdan v. WR Cap. Partners, LLC*, No. CV 2018-0343-JTL, 2019 WL 3891720, at *10 (Del. Ch. Aug. 19, 2019), *aff'd*, 244 A.3d 668 (Del. 2020). At best, Plaintiff alleges that he was a shareholder of Spruce Power and its predecessor, Pivotal, since September 18, 2020.[3] (Compl. n.1, ¶¶ 1, 2, 37.) Yet Plaintiff never alleges that he was a shareholder of Legacy XL. Pivotal did

[3] Plaintiff generally alleged that he was a shareholder of Spruce Power "during the Relevant Period," defined as September 18, 2020 through the filing of the Complaint on September 29, 2023. He did not specifically allege when, during the period, that he held shares.

not merge with Legacy XL until December 21, 2020. (*Id.* ¶ 198.) Because Plaintiff was not a shareholder of Legacy XL, he lacks standing to bring derivative claims against directors and officer of that entity, including the Legacy XL Defendants.

For the same reason, the Legacy XL Defendants owed no fiduciary duties to Plaintiff before the acquisition. "The Delaware Supreme Court has consistently held that directors do not owe fiduciary duties to future stockholders." *Feldman v. Cutaia*, No. CIV.A. 1656-N, 2006 WL 920420, at *6 n.37 (Del. Ch. Apr. 5, 2006) (collecting cases). "[U]nder established Delaware law, a breach of fiduciary duty claim must be based on an actual, existing fiduciary relationship between the plaintiff and the defendants at the time of the alleged breach." *CVC Claims Litig. LLC v. Citicorp Venture Cap. Ltd.*, No. 03 CIV. 7936 (DAB), 2006 WL 1379596, at *6 (S.D.N.Y. May 18, 2006); *Xcell Energy & Coal Co., LLC v. Energy Inv. Grp., LLC*, No. CIV.A. 8652-VCN, 2014 WL 2964076, at *9 (Del. Ch. June 30, 2014) (collecting cases). As such, the Legacy XL Defendants owed no fiduciary duties to Plaintiff for any conduct before the acquisition. Without alleging the essential element of fiduciary duty, Plaintiff does not allege viable claims of breach of that duty, or the related claims that are predicated on that duty (Compl. ¶¶ 389, 394).[4]

**2. The Statute of Limitations Bars Any Fiduciary Duty Claims Based on Conduct before September 29, 2020, Including the September 18, 2020 Statement.**

Plaintiff's pre-acquisition claims also are barred in part by the statute of limitations. A three-year statute of limitations applies to breaches of fiduciary duty under Delaware law. *In re*

---

[4] Plaintiff also failed to allege that Kazarinoff breached any fiduciary duty prior to the acquisition. The only two alleged misstatements by Kazarinoff before the acquisition—one on September 18, 2020 and another on October 26, 2020—concerned pipeline and revenue projections, which are forward-looking statements of opinion, subject to considerable judgment. To prove the falsity of these opinions, Plaintiff must allege not only objective falsity, but also Kazarinoff's subjective disbelief of the projection. *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 757 F. Supp. 2d 260, 319 (S.D.N.Y. 2010). Plaintiff does not allege that Kazarinoff doubted either figure.

*Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007) (citing 10 Del. C. § 8106). A cause of action accrues when there has been a harmful act by the defendant, even if the plaintiff is unaware of the harm. *Id.* Similarly, a three-year statute of limitations applies to unjust enrichment and corporate waste claims. *Gavin v. Club Holdings, LLC*, No. 15-175-RGA, 2016 WL 1298964, at *8 (D. Del. Mar. 31, 2016); 10 Del. C. § 8112. Plaintiff filed his Complaint on September 29, 2023, which means that the statute of limitations bars any claim based on the Legacy XL Defendants' alleged conduct before September 29, 2020. That time period includes the alleged statements by the Legacy XL Defendants during the September 18, 2020 conference call and by Hynes during an interview that same day. (Compl. ¶¶ 247-48, 257.)

Based on the allegations in the Complaint, Plaintiff is unable to meet his burden to plead facts sufficient to show that the statute of limitations was tolled. *In re Primedia, Inc. S'holder Litig.*, No. CIV.A. 6511-VCL, 2013 WL 6797114, at *12 (Del. Ch. Dec. 20, 2013) (citing *In re Tyson Foods, Inc.*, 919 A.2d at 585). Because Plaintiff has not alleged that he was a shareholder of Legacy XL, he cannot benefit from the equitable tolling doctrine, which protects shareholders from faithless fiduciaries. *See id.* at *12 ("Equitable tolling usually applies to claims involving self-dealing where a plaintiff reasonably relies on the competence and good faith of a fiduciary.") (quoting *Pomeranz v. Museum Partners, L.P.*, No. CIV. A. 20211, 2005 WL 217039, at *3 (Del. Ch. Jan. 24, 2005)).[5]

[5] Plaintiff also does not allege that the Legacy XL Defendants concealed their conduct from the Legacy XL Board, such that the Board was not aware of his alleged misconduct, or that the Legacy XL Board was incapable of bringing the state law claims against the Legacy XL Defendants.

### C. Plaintiff's Post-Acquisition Claims Should Be Dismissed.

#### 1. Plaintiff Does Not Allege a Fiduciary Duty Claim against the Legacy XL Defendants in Their Capacities as Directors after the Acquisition.

As discussed in Spruce Power's Memorandum of Law, the Articles of Incorporation exculpate directors for duty of care violations. This exculpation applies to the Legacy XL Defendants' service as directors of XL Fleet. Hynes served as a director both before and after the acquisition, while Kazarinoff served as a director after the acquisition. As a result, with respect to their conduct as directors after the acquisition, the Legacy XL Defendants may be liable only for a violation of the duty of loyalty. *In re Cornerstone Therapeutics Inc., S'holder Litig.*, 115 A.3d 1173, 1186 (Del. 2015) (quoting *Emerald Partners v. Berlin*, 787 A.2d 85, 92 (Del. 2001)).

To state a claim for a breach of the duty of loyalty, a plaintiff must allege that a director "knowingly engaged in 'fraudulent' or 'illegal' conduct or breached [his fiduciary duties] 'in bad faith.' " *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008). With respect to Plaintiff's *Caremark* claim alleging a failure to oversee disclosures, the Legacy XL Defendants join the argument in the Spruce Power Memorandum. The Legacy XL Defendants only add that Plaintiff fails to allege any individualized oversight failure or bad faith specific to Hynes or Kazarinoff, which Plaintiff was required to do.

As to any alleged breach of the fiduciary duty to disclose arising from the Legacy XL Defendants' personal statements, Plaintiff must allege that the Legacy XL Defendants "*deliberately* misinformed shareholders about the business of the corporation." *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 134 (Del. Ch. 2009) (emphasis in original). The Complaint includes a single allegation regarding the Legacy XL Defendants' state of mind—that Kazarinoff and Hynes knew (or were reckless in not knowing) that the revenue projections in the *October 2, 2020* registration statement were false. (Compl. ¶ 282.) Plaintiff does not include any

comparable allegation with respect to the *January 13, 2021* registration statement. Significantly, because XL Fleet was subject to different reporting rules after the acquisition, the January 13, 2021 registration statement did not include the revenue projections from the October 2, 2020 registration statement, or any other revenue projections. *Compare* XL Fleet, Registration Statement (Form S-1), at 88 (Jan. 13, 2021), *with* XL Fleet, Registration Statement (Form S-1) (Jan. 13, 2021). Nor does Plaintiff allege the reasons that Kazarinoff or Hynes knew that the only other alleged post-acquisition statements, which expressed general optimism about the combined company and its prospects in the market, were false when made on December 22, 2020 and December 23, 2020, respectively. (Compl. ¶¶ 316, 318.) Plaintiff also do not allege any personal benefit by the Legacy XL Defendants that would suggest bad faith. Plaintiff only alleges that Kazarinoff and Hynes earned increased salaries and *target* bonuses, and that stock held before the acquisition by Kazarinoff converted into the post-acquisition entity—without any allegation of actual stock sales by Kazarinoff. (*Id.* ¶¶ 41, 42, 202, 214.) The only other allegation about the Legacy XL Defendants in the post-acquisition period is that, according to Plaintiff, Kazarinoff personally revealed the true state of XL Fleet's business and withdrew earnings guidance during the March 31, 2021 earnings call.[6] (*Id.* ¶¶ 28-29.) In short, Plaintiff does not allege facts sufficient to show that the Legacy XL Defendants deliberately misled shareholders as directors.

### 2. Plaintiff Does Not Allege a Fiduciary Duty Claim against the Legacy XL Defendants in their Capacities as Officers after the Acquisition.

After the acquisition on December 21, 2020, the Legacy XL Defendants also served as officers of XL Fleet. Plaintiff alleges only three acts by the Legacy XL Defendants after the

---

[6] Plaintiff weakly claims that Kazarinoff attempted to "deflect blame" and "dodge [analyst] questions" in the press release and earnings call, but does not actually allege a specific misstatement. (¶¶ 236-37.)

acquisition: (1) expressions of general optimism by Kazarinoff in a December 22, 2020 press release announcing the acquisition (*id.* ¶ 316); (2) expressions of general optimism and prospects in the market by Hynes in a December 23, 2020 interview (*id.* ¶ 318); and (3) the Legacy XL Defendants' approval of the January 13, 2021 registration statement, which did not attribute any particular statement to Kazarinoff or Hynes personally (*id.* ¶¶ 320, 322). Plaintiff fails to state a claim for breach of the duty of loyalty or the duty of care based on either act.

Kazarinoff's statements in the December 22, 2020 press release announcing the closing of the acquisition, and Hynes' statements in the December 23, 2020 interview, constituted nonactionable puffery or opinion. General statements of corporate optimism are puffery or opinion that are "not actionable as a breach of fiduciary duty." *Weil v. Morgan Stanley DW Inc.*, 877 A.2d 1024, 1028 (Del. Ch. 2005), *aff'd*, 894 A.2d 407 (Del. 2005); *Kusnier v. Virgin Galactic Holdings, Inc.*, 639 F. Supp. 3d 350 (E.D.N.Y. 2022). In the December 2020 press release, Kazarinoff stated that the closing of the acquisition would "empower us to accelerate our growth strategy," and that the Company's "tested products, strong presence in the US and Canada, firmly established supply chain, and deep OEM relationships position XL Fleet as the partner of choice" for customers. (Compl. ¶ 316.) Plaintiff offers no evidence that Kazarinoff *personally* did not believe this statement or that he knew facts to the contrary.

Similarly, in the December 23, 2020 interview, when speaking about XL Fleet's prospects, Hynes stated that XL Fleet "ha[s] a great pipeline going into 2021, and [ ] also ha[s] a very good platform to build off of and introduce a lot more technology and product offerings," and that XL Fleet was "in a great position to really expand with the market, which clearly has a lot of demand." (*Id.* ¶ 318). Again, Plaintiff provides no evidence that Hynes *personally* had any reason to believe this was false or knew facts to inform him so.

The Complaint itself demonstrates that the registration statement filed on January 13, 2021 was not misleading. Plaintiff alleges that the registration statement misleadingly "implied" that the pandemic caused the battery supply issues, "failed to disclose" the severity of battery shortages, and "suggested" that sufficient battery supply could be secured in the future. (*Id.* ¶¶ 322-23.) But the Complaint acknowledges that "Defendants did offer certain risk warnings and other disclosures concerning supply issues" and recites numerous, extensive disclosures related to battery problems, including that "XL has experienced, and in the future may again experience, increases in the cost or a sustained interruption in the supply or shortage of its components." (*Id.* ¶¶ 144, 183, 185, 298, 300.) Moreover, on the face of the Complaint, the alleged misstatements in the January 31, 2021 registration statement all worked to explain the reason "[r]evenues increased" for the first three quarters of 2020 and the third quarter of 2020, as compared to the same periods in 2019, not the reasons for 2019 performance. (*Id.* ¶ 322.) The Complaint does not allege that, in fact, XL Fleet's performance in 2020 resulted from resolution of battery shortages, much less that the Legacy XL Defendants personally knew that statement was false.

For the reasons discussed in the Spruce Power Memorandum, the Legacy XL Defendants cannot be liable for any failure to oversee corporate disclosures. The Complaint lacks any allegation that the Legacy XL Defendants acted in bad faith or disregarded their duty to monitor and oversee XL Fleet. Instead, Plaintiff identifies internal controls and processes designed to produce accurate and complete disclosures, including the Audit Committee charter, Code of Conduct, and whistleblower policy. (*Id.* ¶¶ 62-72.)[7]

---

[7] For the reasons discussed in Section IV.C *supra*, Kazarinoff owed no fiduciary duty, whether in his capacity as a director or an officer, to Plaintiff following Kazarinoff's departure in November 2021 and cannot be liable for any alleged state law claims after that time. (*Id.* ¶ 42).

### 3. Plaintiff Does Not Allege an Unjust Enrichment Claim.

Plaintiff's failure to state a claim for breach of fiduciary duty is fatal to his unjust enrichment claim against the Legacy XL Defendants. In Count IV, Plaintiff alleges that the Legacy XL Defendants were "unjustly enriched as a result of the compensation [they] received while breaching [their] fiduciary duties owed to Spruce Power." (*Id.* ¶ 389.) When an unjust enrichment claim is premised on a dismissed breach of fiduciary duty claim, the "unjust enrichment claim is dismissed as well." *In re Bank of Am. Litig.*, No. 09 MD 2058 PKC, 2013 WL 1777766, at *15 (S.D.N.Y. Apr. 25, 2013) (citing *Monroe Cnty. Emp. Ret. Sys. v. Carlson*, 2010 WL 2376890, at *2 (Del. Ch. June 7, 2010)).

Otherwise, a claim for unjust enrichment under Delaware law must allege "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *In re Pfizer Inc. S'holder Deriv. Litig.*, 722 F. Supp. 2d 453, 465 (S.D.N.Y. 2010) (citing *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 585 (Del. Ch. 1998)). But "a claim for unjust enrichment cannot be maintained where, as here, the 'only enrichment alleged by plaintiffs consists of defendants' salaries, benefits, and unspecified bonuses.' " *Steinberg v. Dimon*, No. 14 CIV. 688 PAC, 2014 WL 3512848, at *4 (S.D.N.Y. July 16, 2014) (quoting *In re Pfizer*, 722 F. Supp. 2d at 465). Moreover, conclusory allegations "that defendants' compensation was profligate or paid for an improper purpose" are insufficient to state a claim for unjust enrichment. *In re Pfizer*, 722 F. Supp. 2d at 465. Here, Plaintiff summarily alleges that the Legacy XL Defendants were enriched by their "compensation." (Compl. ¶ 389.) The only possible compensation alleged by Plaintiff was an increase in the Legacy XL Defendants' salaries and *target* bonuses, which is plainly insufficient to state a claim for unjust enrichment. (*Id.* ¶¶ 41-42.) Moreover, the Complaint attributes this increase to 2020 performance, which fails to connect increase to alleged misstatements, much less

actionable misstatements. (*Id.* ¶ 214.) Kazarinoff's Legacy XL stock options, which Plaintiff does not specifically label as "compensation," were converted to XL Fleet common stock with the acquisition. (*Id.*) However, Plaintiff does not allege that Kazarinoff received the options due to alleged "wrongful acts and omissions"—or, more basically, even how or when he acquired them—or that Kazarinoff ever sold the converted stock.[8] (*Id.*) Plaintiff's unjust enrichment claim fails to state a claim to relief that is plausible on its face and should be dismissed.

### 4. Plaintiff Does Not Allege a Corporate Waste Claim.

Plaintiff's claim for corporate waste likewise fails. Delaware's standard for corporate waste is "an extreme test, very rarely satisfied by a shareholder plaintiff." *Zupnick v. Goizueta*, 698 A.2d 384, 387 (Del. Ch. 1997) (citation omitted). "To state a claim for waste, it must be reasonably conceivable that the directors 'authorize[d] an exchange that [was] so one sided that no businessperson of ordinary, sound judgment could conclude that the corporation has received adequate consideration,' *i.e.*, the transfer of corporate assets was a 'gift.' " *Calma on Behalf of Citrix Sys., Inc. v. Templeton*, 114 A.3d 563, 590 (Del. Ch. 2015) (citations omitted). Against this backdrop, Plaintiff alleges that the Legacy XL Defendants "wasted corporate assets by, among other things: (a) paying excessive compensation and bonuses to certain executive officers; (b) awarding self-interested stock options to certain officers and directors; and (c) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the

[8] Plaintiff ambiguously alleges that, "[p]ursuant to his lucrative separation agreement with the Company (and approved by the Board), Kazarinoff received total compensation from XL Fleet exceeding $4.8 million for 2021." (Compl. ¶ 42.) Presumably, Plaintiff draws that number from XL Fleet's 2021 Form 10-K, which states the following: "For the year ended December 2021, selling, general, and administrative expenses include charges of $4.8 million related to the separation of the prior Chief Executive Officer, of which $4.4 million was a non-cash charge for modifications to outstanding stock awards." XL Fleet, Annual Report (Form 10-K), at 29 (Mar. 1, 2022). In any event, Plaintiff attributes the $4.8 million to Kazarinoff's separation agreement and not to any breach of fiduciary duty. (Compl. ¶ 42.)

Company and its officers against the Related Securities Action." (Compl. ¶ 394.) As to both Kazarinoff and Hynes, none of these allegations is sufficient.

As an initial matter, with respect to the first two categories of compensation and options, Plaintiff does not allege that the Legacy XL Defendants personally *paid* compensation or *awarded* options, decisions attributed to the post-acquisition XL Fleet Board more generally. (*E.g.*, *id.* ¶ 214.) As to the compensation that they received, Plaintiff does not allege "the rare type of facts from which it is reasonably conceivable that the [remuneration is] so far beyond the bounds of what a person of sound, ordinary business judgment would conclude is adequate consideration to the Company." *Calma*, 114 A.3d at 591 (citing *In re 3COM Corp.*, No. C.A. 16721, 1999 WL 1009210, at *5 (Del. Ch. Oct. 25, 1999)). Labeling the compensation as "excessive," Plaintiff essentially complains without specificity that the compensation was based on unjustified performance. That conclusory allegation "fall[s] far short of demonstrating that such compensation constitutes a gift or gratuity for which the corporation received no consideration." *Espinoza v. Zuckerberg*, 124 A.3d 47, 67 (Del. Ch. 2015) (citing *Lewis v. Vogelstein*, 699 A.2d 327, 335 (Del. Ch. 1997)). As discussed above, the Complaint does not allege that Kazarinoff was awarded stock options in connection with the acquisition, but only that previously held options converted at the time of the acquisition. (Compl. ¶ 42.) No such allegation is made as to Hynes whatsoever. (*Id.*) Moreover, Plaintiff does not allege that the options were given to Kazarinoff as a gratuity, the sine qua non of corporate waste in Delaware. *See In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 74 (Del. 2006).

With respect to the third category of legal liability and costs, which are unspecified beyond defense costs associated with the Related Securities Action, Plaintiff's allegations are inadequate for at least two reasons. First, Plaintiff does not allege that the Legacy XL Defendants had any

role in approving legal spending. Second, Plaintiff again fails to allege that the legal costs are a gratuitous outlay without consideration to the company as required under "extreme test" for corporate waste. *Espinoza*, 124 A.3d at 67; *see, e.g., Garcia v. Carrion*, No. CIV 09-1507 JAG, 2010 WL 3662593, at *9 (D.P.R. Aug. 11, 2010) (dismissing corporate waste claim related to legal costs where plaintiff "nowhere avers that the corporation will not derive a legitimate value from defending its own actions, which heretofore have not been proven to violate the law" or that the legal services are "largely worthless"). Accordingly, this Court should dismiss the corporate waste claim against the Legacy XL Defendants.

## V. CONCLUSION

For the reasons set forth above, Legacy XL Defendants respectfully requests that the Court dismiss the Complaint as against them.

Dated: March 11, 2024

Respectfully submitted,

*Caitlyn Campbell*

Caitlyn Campbell
**McDERMOTT WILL & EMERY LLP**
200 Clarendon Street, Floor 58
Boston, MA 02116-5021
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
Email: ccampbell@mwe.com

Paul Helms (Admitted *Pro Hac Vice*)
**McDERMOTT WILL & EMERY LLP**
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
Email:phelms@mwe.com

*Counsel for Defendant Dimitri Kazarinoff*

Respectfully submitted,

*Peter Welsh*

Peter Welsh
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street,
Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile: (617) 951-7050
Email: peter.welsh@ropesgray.com

Ethan Weinberg
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Email: ethan.weinberg@ropesgray.com

*Counsel for Defendant Thomas J. Hynes III*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically on March 11, 2024. Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*Caitlyn Campbell*
Caitlyn Campbell